**Ming Luen HUI**

v.

### The CITY OF PHILADELPHIA PARKING AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2006.

Filed Dec. 29, 2006.

Andrew A. Chirls, Philadelphia, for appellant.

James Stevens Sell, Philadelphia, for appellee.

BEFORE: SIMPSON, Judge,
LEAVITT, Judge, KELLEY, Senior
Judge.

OPINION BY Judge LEAVITT.

The City of Philadelphia Parking Authority (Parking Authority) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) that reversed the Parking Authority decision to revoke the taxicab license of Ming Luen Hui (Hui). The Parking Authority did so because Hui failed to disprove the allegations of the Parking Authority that Hui had an incomplete communication system in his taxicab, maintained his taxicab in an unsanitary and dirty condition, and had committed bribery. In this case we consider whether it is the taxicab driver or the Parking Authority that bears the burden of proof where the Parking Authority seeks to revoke the license of a taxicab operator.

The background to this appeal is as follows. On September 7, 2005, Enforcement Officer Steven Owens of the Parking Authority's Taxicab and Limousine Division, observing erratic operation of Hui's taxicab, stopped Hui and performed a routine inspection of his taxicab. As a result of this inspection, Hui was issued citations for violating the Parking Authority's regulations, and a hearing was held.

On behalf of the Parking Authority, Owens testified that when he inspected Hui's taxicab, he discovered that its radio was not hooked up. Because this is a violation, Owens removed the vehicle's medallion thereby taking the taxicab out of service.[1] Hui opened the trunk to show Owens that he had the radio in a bag, revealing to Owens a dirty spare tire, several bags, oil containers and antifreeze containers. This prompted Owens to inform Hui that he was going to receive a second citation for a dirty taxicab. In response, according to Owens, Hui said that he would give Owens $500 to put the medallion back on the car and forget about the citations. Reproduced Record at 8a, 10a (R.R. ——). Owens admitted, however, that Hui did not present any cash in connection with this alleged bribery offer. The next day, Hui approached Owens at his office and apologized to him.

The Parking Authority also presented the testimony of Owens' supervisor, Deputy Manager Robert Black, who arrived on the scene on September 7, 2005, upon a call from Owens. Black asked Hui why he would offer someone $500, knowing that it is illegal. Hui replied that he was sorry and stated that he did not realize that it was against the law. Black also acknowledged that he saw no cash in Hui's taxicab or on his person.

Finally, the Parking Authority presented the testimony of Inspector Alfred Ponticelli, who testified that on the day after the incident, he was helping Owens inspect a taxicab when Hui entered the garage. Ponticelli heard Hui tell Owens that he was sorry.

Hui's version of the events was different. Hui testified that he purchased his own taxicab in 1990 and has been working as a taxicab driver since that time. Hui testified that he did not try to bribe Officer Owens; rather, he was inquiring into how much the "tickets" given to him by Officer Owens would cost.[2] He stated that he did

---

1. A medallion is defined in Section 2(gg) of the Parking Authority's regulations as "A plaque ... that contains a unique number assigned by the [Parking] Authority, which is to be affixed to a vehicle by [Parking] Authority personnel before that vehicle may be operated as a Taxicab for citywide service in Philadelphia." Philadelphia Parking Authority— Taxicab and Limousine Regulations (June 27, 2005) (PARKING AUTHORITY REGULATIONS), § 2(gg).

2. The notes of testimony state:

He gave me the ticket, so I don't know what this ticket was all about.... I just hold the

not have the means to pay a $500 bribe; in fact, he had only $20 to $40 in cash on his person, as needed to make change for customers. Hui also testified that he apologized for his behavior in getting angry. He denied offering a bribe because he knew it would ruin his career. Hui did not offer any testimony relevant to the citations that he operated the taxicab in an unsanitary and dirty condition or with an incomplete communication system.

The Hearing Officer found all of the Parking Authority's witnesses to be credible and rejected Hui's testimony as not credible. The Hearing Officer made the following findings of fact:

1. The Complainant in this proceeding is the Taxicab and Limousine Division ("TLD") of The Philadelphia Parking Authority ("Parking Authority").

2. The Respondent in this proceeding is Ming Luen Hui.

3. The Respondent is represented by Lawrence Kalikhman, Esq.

4. The Respondent failed to meet his burden of proof that he did not violate the TLD's Regulation prohibiting the operation of a taxicab in an unsanitary and dirty condition.

5. The Respondent failed to meet his burden of proof that he did not violate TLD Regulation by operating a taxicab with an incomplete communication system.

6. The Respondent did not meet his burden of proof that he did not violate the TLD's Regulation prohibiting Bribery.

7. The Respondent did operate a taxicab in an unsanitary and dirty condition.

8. The Respondent did operate a taxicab with an incomplete communication system.

9. The Respondent did offer a Bribe to TLD Enforcement Officer Owens to have Respondent's Medallion replaced on his taxicab and to have the Officer "forget" about the tickets about to be issued.

R.R. 47a. In making these findings of fact, the Hearing Officer concluded that Hui had the burden of showing by a preponderance of the evidence that he did not commit the violations as alleged by the Parking Authority.[3] Because Hui failed to meet his burden of proof, the Hearing Officer sustained the Parking Authority's citations and ordered Hui to pay a fine of $750 for having an incomplete communication system; a fine of $150 for operating a dirty cab; and barred Hui from the taxicab and limousine industry for a period of at least ten years as a result of the bribery.

ticket and asked him what's this? I have to give $200, $300, $500, something like that? R.R. 16a.

3. The Hearing Officer found that this was the burden of proof required under *The Philadelphia Parking Authority v. Ayed Abdelaziz* (Phila. Parking Auth., Docket No. 03–05–05). R.R. 48a. In that case, another taxicab driver was accused of bribery and the Hearing Officer conducted a hearing and determined that the Parking Authority was using the burden of proof found in the Public Utility Code. He also determined that the taxicab driver did not meet his burden of proving by a preponderance of the evidence that he did not offer a bribe. The driver appealed, and in an unpublished opinion, Judge Dych of the Court of Common Pleas of Philadelphia County determined that the Hearing Officer erred in using that burden of proof, and that the burden of proof should be on the Parking Authority. *Ayed Abdelaziz v. The Philadelphia Parking Authority* (Phila. C.C.P., No. 1704 August Term 2005, filed April 3, 2006). (unpublished memorandum opinion). This opinion has not been appealed.

Hui appealed to the trial court, and it reversed. The trial court determined that the Parking Authority erred in placing the burden on Hui to prove that he did not violate the Parking Authority's regulations. It rejected the Parking Authority's assertion that its rules on burden of proof were simply a continuation of what was required under the Public Utility Code when taxicabs were regulated by the Pennsylvania Public Utility Commission (PUC). The trial court held that the Public Utility Code was irrelevant to the Parking Authority's discipline of taxicab drivers in Philadelphia. Instead, the trial held that it is the party seeking the remedy, *i.e.*, the Parking Authority, that bears the burden of proof, as held in prior decisions of the trial court. After the Parking Authority's request for reconsideration was denied, it appealed to this Court.

The Parking Authority raises two issues on appeal.[4] First, the Parking Authority argues that the trial court erred in assigning the burden of proof to the Parking Authority. Second, the Parking Authority argues that the trial court erred in reversing the decision when, instead, it should have vacated and remanded the matter for disposition in accordance with the burden of proof prescribed by the trial court in its opinion. We address these issues *seriatim*.

We begin with an examination of the law applicable to the operation of taxicabs in Philadelphia. Historically, the PUC regulated the taxicab industry throughout the Commonwealth, but in 2004 responsibility for overseeing the taxicab industry in Philadelphia was transferred to the Parking Authority. *See generally* 53 Pa.C.S. §§ 5701–5745 (regulating taxicabs and lim-

ousines in first class cities). The new statute authorizes the Parking Authority to revoke a taxicab operator's certification where that operator is not "fit." The statute states, in relevant part, as follows:

(a) **General rule.**—The [Parking Authority] shall provide for the establishment of a driver certification program for drivers of taxicabs and limousines within cities of the first class. Standards for fitness of all drivers shall be established under such rules and regulations as the [Parking Authority] may prescribe. *The [Parking Authority] may revoke or suspend a driver's certificate upon a finding that the individual is not fit to operate a taxicab or limousine, as applicable.... The [Parking Authority] may establish orders or regulations* which designate additional requirements governing the certification of drivers and the operation of taxicabs or limousines by drivers, including, but not limited to, dress codes for drivers.

53 Pa.C.S. § 5706 (emphasis added). Parking Authority regulations promulgated under 53 Pa.C.S. 5706(a) establish that an operator who bribes a Parking Authority employee is not "fit." Regulation 2(e) defines a "bribe" as:

Any offer to or request from a [Parking Authority] employee or Agent for any favor, payment or compensation in return for any special consideration from the payer consistent with 18 Pa.C.S. § 4701. This definition shall be in addition to the definition of "Bribe" under the laws of the Commonwealth, includ-

---

4. In evaluating the decision of an agency, where a complete record is made before that agency, our standard of review is whether the agency committed an error of law and wheth-

er the material findings of fact are supported by substantial evidence. *Piatek v. Pulaski Township*, 828 A.2d 1164, 1170 (Pa.Cmwlth. 2003).

ing the definition provided in the Pennsylvania Crimes Code.

Parking Authority Regulations § 2(e). The regulations also provide for the consequence of making a bribe, stating that:

Any person found to be offering a bribe to [a Parking] Authority employee *shall be barred from the Industry* and not issued a Certificate to operate, drive, dispatch, broker or provide other financial services *for a period of at least ten (10) years* and reported to the appropriate law enforcement officials.

Parking Authority Regulations § 29(e)(i)(emphasis added).

█ The new statute also speaks to the procedure for handling alleged violations. 53 Pa.C.S. § 5705 provides in relevant part as follows:

(a) **Adjudication.**—Contested complaints brought before the [Parking Authority] alleging violations of this chapter or rules and regulations promulgated by the [Parking Authority] pursuant to this chapter shall be assigned by the [Parking Authority] to a hearing officer for adjudication....Following the taking and receiving of evidence, the hearing officer shall issue a decision which determines the merits of the complaint and assesses a penalty if warranted. The hearing officer may require the filing of briefs prior to issuing a decision. The hearing officer's decision shall not be subject to exception or administrative appeal. *In its discretion, the [Parking Authority] may exercise review of a hearing officer's decision within 15 days of the date of issuance. If the [Parking Authority] does not perform a timely review of a hearing officer's decision, the decision will become a final order without further*

*[Parking Authority] action.* The [Parking Authority] may establish orders or regulations which designate rules and procedures for the adjudication of complaints brought pursuant to this chapter.

53 Pa.C.S. § 5705(a) (emphasis added). In this case, because the Parking Authority did not undertake a timely review of the Hearing Officer's decision, it became the final order of the Parking Authority.

Neither the statute nor the regulations specify a burden of proof to be used in cases where it is alleged that a taxicab operator is not "fit" to be an operator. 53 Pa.C.S. § 5706(a). The Parking Authority argues that placing the burden of proof on a taxicab driver is permissible under Pennsylvania law, because the PUC has long done so in its regulation of the taxicab industry; therefore, it follows that it cannot be unfair for the Parking Authority to continue this procedure.

In support of its argument, the Parking Authority points to Sections 315(b) and (c) of the Public Utility Code which provide as follows:

§ 315 **Burden of proof**

\* \* \*

(b) **Compliance with commission determinations and orders.**——In any case involving any alleged violation by a public utility, contract carrier by motor vehicle, or broker of any lawful determination or order of the commission, the burden of proof shall be upon the public utility, contract carrier by motor vehicle, or broker complained against, to show that the determination or order of the commission has been complied with.[5]

(c) **Adequacy of services and facilities.**——In any proceeding upon the

---

**5.** Section 2(*o*) of the Parking Authority's regu- lations defines "contract carrier" as "[a] car-

motion of the commission, involving the service or facilities of any public utility, the burden of proof to show that the service and facilities involved are adequate, efficient, safe, and reasonable shall be upon the public utility.

66 Pa.C.S. § 315(b) and (c). The Parking Authority also relies on *W.C. McQuaide v. Pennsylvania Public Utility Commission,* 157 Pa.Cmwlth. 249, 629 A.2d 272 (1993), which affirmed the PUC's holding that McQuaide, a common carrier, violated the Public Utility Code by allowing an unlicensed company to use its certificate of public convenience. This Court affirmed the PUC's holding that 66 Pa.C.S. § 315(c) places the burden on the utility where the PUC raises a question of adequacy of service.[6] Otherwise, the party seeking a "rule or order" from the PUC has the burden of proof. 66 Pa.C.S. § 332(a).[7]

 We agree with the trial court that Section 315(c) of the Public Utility Code was irrelevant in this case. First, the Public Utility Code does not apply to the regulation of taxicab operators by the Parking Authority. Second, Parking Authority Regulation 29(e) does not deal with the delivery of taxicab service but, rather, deals with the penalty to be imposed on "[a]ny person found to be offering a bribe."[8] Because we deal here with a sanction for bribery, Section 315(c) is irrelevant, even if we were to accept the Parking Authority's premise that it provides a model for some Parking Authority hearings, *i.e.,* those that relate to quality of taxicab service.[9]

 Where the Parking Authority seeks to discipline a driver for an alleged violation, the Parking Authority, not the driver, should bear the burden of proving that the driver did, in fact, commit the alleged violation.[10] It is a general rule of jurisprudence that the party who has the burden of pleading a fact also bears the

---

rier of passengers or property or both, which does not hold itself out, offer or undertake the provision of service to the public for compensation, but rather provides a specialized service designed to meet the needs of a customer with which it has entered into a specialized service contract." PARKING AUTHORITY REGULATIONS § 2(*o*). "Broker" is defined in Section 2(hh) of the Parking Authority's regulations as "[a] Person ... who is involved in facilitating the transfer, purchase or sale of a Medallion for another ..." *Id.* at § 2(hh). "Public utility" is not defined in the Parking Authority regulations.

6. Section 315 allows the PUC to initiate hearings on proposed or existing rates, adequacy of service or alleged violation of a PUC order. 66 Pa.C.S. § 315(a)-(c). In Section 315 proceedings, the utility has the burden of proof.

7. Section 332(a) of the Public Utility Code provides:

(a) **Burden of proof.**——Except as may be otherwise provided in section 315 (relating to burden of proof) or other provisions of this part or other relevant statute, the propo-

nent of a rule or order has the burden of proof.
66 Pa.C.S. § 332(a).

8. At any rate, the only charges that Section 315(c) could possibly relate to would be the incomplete communication system and the dirty cab. Bribery would not fall under this section.

9. In addition, Section 315(b) of the Public Utility Code, 66 Pa.C.S. § 315(b), is not relevant to this situation because it deals with an alleged violation of a PUC determination or order by a public utility, contract carrier or broker. There was no pre-existing determination or order that was violated. In any case, as we note, the Public Utility Code is irrelevant; it has been repealed with respect to taxicabs in Philadelphia.

10. The citations issued to Hui for an incomplete communication system and a dirty cab carry fines totaling $900. Bribery carries a penalty of the individual being barred from the taxicab industry for at least ten years. The definition of "bribery" in the Parking

burden of producing evidence and persuading the fact-finder of its existence. *McCormick on Evidence* § 337 at 473 (6th ed.1999). When the Commonwealth or local agency initiates a suit, whether seeking to enforce a public right or for some other purpose, it bears the burden of proof. *Township of Indiana v. Acquisitions & Mergers, Inc.*, 770 A.2d 364, 372 (Pa. Cmwlth.2001). Consistent with these principles, we hold that the burden of proof belongs to the Parking Authority to prove that the alleged violations were committed, and not on the taxicab driver to prove that he did not commit the wrong.[11]

■ In the Parking Authority's second issue, it argues that the trial court erred in reversing the Hearing Officer's decision instead of vacating it and remanding for disposition under the burden of proof prescribed by the trial court. We agree. Where the fact-finder places the burden of proof on the wrong party, this court cannot determine whether the fact-finder would have reached the same conclusions under the correct allocation of the burden of proof. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256, 1261 (Pa.Cmwlth.1998). Thus, it is appropriate to vacate the fact-finder's order and remand for a determination with the burden of proof placed on the correct party. *Id.* See also *Wheeler v. Civil Service Commission*, 656 A.2d 572, 575 (Pa.Cmwlth.1995) (ordering a remand for further findings where the burden of proof was placed on the wrong party).

■ The Hearing Officer used the wrong burden of proof in determining that Hui committed all three of the violations alleged by the Parking Authority. We agree with the Parking Authority's assertion that rather than simply reversing the Hearing Officer's decision, the trial court should have remanded the matter for the Hearing Officer to render a new decision using the correct burden of proof. Accordingly, we vacate the trial court's order reversing the Hearing Officer's order, and remand this matter to the trial court with instructions to remand to the Hearing Officer for a new decision using the correct burden of proof, *i.e.* with the Parking Authority bearing the burden of proving that Hui committed the alleged violations.

### ORDER

AND NOW, this 29th day of December, 2006, the order of the Court of Common Pleas of Philadelphia County, dated May 19, 2006, in the above captioned case is hereby vacated and this case is remanded to the Court of Common Pleas of Philadelphia County with instructions to remand to the Hearing Officer to issue a new decision placing the burden on the City of Philadelphia Parking Authority to prove that Ming Luen Hui committed the violations alleged.

Jurisdiction relinquished.

Authority's regulations makes reference to the Crimes Code, highlighting the seriousness of the allegation against Hui.

11. The Parking Authority argues that the Hearing Officer's decision on burden of proof was immaterial to his factual findings and legal conclusions. In making this point, the Parking Authority relies on Findings of Fact 7–9 wherein it was found that Hui did commit the three violations. However, in Findings of Fact 4–6, the Hearing Officer stated that Hui did not meet his burden of proving that he did not commit the violations, and again in conclusions of law 2–3, the Hearing Officer placed the burden of proof on Hui and concluded that he did not meet it. Therefore, we cannot say that the Hearing Officer did not base his findings of fact and conclusions of law on the erroneous assignment of the burden of proof to Hui, and we reject this argument.