[No. 63052-1-I.   Division One.   December 6, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN ROBERT HURST, *Petitioner*.

*David L. Donnan* and *Mindy M. Carr* (of *Washington Appellate Project*), for petitioner.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Donna L. Wise, Deputy*, for respondent.

¶1 GROSSE, J. — To commit a defendant to a third confinement for restoration of competency, the State must prove that the defendant will be restored to competency, and that the defendant is either a substantial danger to others, or that the defendant will commit criminal acts jeopardizing public safety or security. Here, the jury was properly instructed that it need find these additional factors only by a preponderance of the evidence.[1] We believe that instruction to have been proper.

## FACTS

¶2 On March 20, 2008, John Hurst was charged with felony third degree assault. On the defense's motion, the

---

[1] Although the defendant has since been found to remain incompetent and the criminal charges against him have been dismissed, potentially rendering the issue moot, we nonetheless grant discretionary review because the matter is of continuing and substantial public interest.

trial court ordered a pretrial competency evaluation. In May 2008, the trial court found Hurst incompetent to stand trial and ordered him committed to Western State Hospital (Western) for up to 90 days for competency restoration.[2] In August 2008, the trial court again found Hurst incompetent to stand trial and ordered him committed to Western for a second 90-day period for competency restoration.[3]

¶3 On November 17, 2008, Western reported that Hurst remained incompetent to stand trial and requested an additional 180 days for competency restoration. Hurst requested a jury trial on all issues, including his incompetency. Defense counsel argued Hurst was incompetent and not entitled to a jury on this question. Appointed independent counsel agreed, as did the State. After hearing from Hurst and reviewing the reports from the State and defense experts, all of whom agreed Hurst was not competent, the court found Hurst was not competent to stand trial and therefore had no legal right to a jury trial to contest competency.

¶4 Pursuant to RCW 10.77.086(4), defense counsel requested a jury trial on the remaining issue of whether the criminal charges should be dismissed. RCW 10.77.086(4) provides that if a defendant is found incompetent, the charges shall be dismissed unless a jury finds that the incompetent defendant "is a substantial danger to other persons; or . . . presents a substantial likelihood of committing criminal acts jeopardizing public safety or security; and . . . there is a substantial probability that the defendant will regain competency within a reasonable period of time."

¶5 Defense counsel argued that the jury was required to find these additional factors by clear, cogent, and convincing evidence. The trial court disagreed and instructed that the jury need find these factors only by a preponderance of the evidence. At the conclusion of the evidence, the jury found that Hurst did not present a substantial danger to others

[2] RCW 10.77.086(1).

[3] RCW 10.77.086(3).

but did find that there was a substantial likelihood that he would commit criminal acts jeopardizing public safety or security, and that there was a substantial probability that he would regain competency within a reasonable period of time.

¶6 On February 6, 2009, the trial court entered an order finding Hurst incompetent based on its earlier determination. The court ordered Hurst committed to Western a third time for up to 180 days for competency restoration, in accordance with the jury's findings. Subsequently, Western reported that Hurst remained incompetent. On August 3, 2009, the court dismissed the charges without prejudice and ordered Hurst held pending the filing of a civil commitment petition under chapter 71.05 RCW. Hurst appealed and we granted discretionary review.

## ANALYSIS

¶7 RCW 10.77.086 sets forth the procedures for a trial court to restore competency. Upon an initial finding of incompetency, the court may commit a defendant to Western for 90 days for evaluation and treatment. At the end of that period, the court is required to hold a hearing in accordance with RCW 10.77.086(2). In order to extend the order of commitment for an additional 90 days, the court must hold another hearing and find the defendant incompetent by a preponderance of the evidence.[4] At the end of the second 90-day period, if the defendant is still found incompetent, the charges must be dismissed unless the finder of fact makes two additional findings that warrant continued commitment for up to 180 days:

> For persons charged with a felony, at the hearing upon the expiration of the second ninety-day period . . . if the jury or court finds that the defendant is incompetent, the charges shall be dismissed without prejudice, and either civil commitment proceedings shall be instituted or the court shall order the

---

[4] RCW 10.77.086(3).

release of the defendant. The criminal charges shall not be dismissed if the court or jury finds that: (a) The defendant (i) is a substantial danger to other persons; or (ii) presents a substantial likelihood of committing criminal acts jeopardizing public safety or security; and (b) there is a substantial probability that the defendant will regain competency within a reasonable period of time. In the event that the court or jury makes such a finding, the court may extend the period of commitment for up to an additional six months.[5]

RCW 10.77.086(4) does not specify the proper burden of proof needed for continued confinement for mental health treatment to restore competency. The State and the defendant both agree that the initial findings of incompetency should be supported by a preponderance of the evidence. The defendant argues that the additional factors needed to continue confinement past the second 90-day period require a higher standard of proof than a preponderance of the evidence.

■ ■ ¶8 In interpreting a statute, our fundamental objective is to carry out legislative intent.[6] The plain meaning of a statute is determined from the language used, the context of the statute, related provisions, and the statutory scheme as a whole.[7] Here, the previous subsection of the statute explicitly imposes a preponderance of the evidence standard of proof.[8] Had the legislature intended that a different standard of proof apply to the third finding of incompetency, it would have explicitly so stated. The fact that the findings of additional grounds are included in the same section under which a fact finder must find incompetency leads to the inevitable conclusion that

---

[5] RCW 10.77.086(4).

[6] *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995).

[7] *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

[8] RCW 10.77.086(3). The use of a preponderance of the evidence standard for determination of incompetency is in accord with the United State Supreme Court's holding in *Cooper v. Oklahoma*, 517 U.S. 348, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996) (overruling Oklahoma statute that imposed clear and convincing standard of proof on a defendant who asserts incompetency).

the same standard applies to the entire section. This is particularly true because, unlike the present case, the jury is normally presented with the question of competency at the same time it decides the additional factors.

■ ¶9 Nonetheless, Hurst argues that he was denied due process of law.[9] Hurst argues that we should apply the *Mathews v. Eldridge*[10] balancing test to determine what standard of proof is required to satisfy procedural due process. But in *State v Heddrick*,[11] our Supreme Court explicitly rejected the *Eldridge* test for criminal matters. Instead, in criminal cases, it found the appropriate analysis to be the due process analysis as articulated in *Medina v California*.[12]

¶10 Under *Medina*, courts give substantial deference to state legislative judgments in matters of criminal procedure.[13] Here, the State has set forth the due process procedures for those defendants who, although found to be incompetent, are still capable of being restored to competency so that they will face the charges. The preponderance of evidence standard satisfies the requirement of due process in these circumstances. Due process does not require the State to adopt a procedure simply because that procedure may produce more safeguards to a defendant.[14] As the *Medina* Court noted, " '[T]raditionally, due process has

---

[9] U.S. Const. amends. V, XIV; Wash. Const. art. I, § 3 ("No person shall be deprived of life, liberty, or property, without due process of law.").

[10] 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). In *Eldridge*, the United States Supreme Court held that courts should weigh the following factors to determine what process is due in a particular situation: (1) the private interest at stake in the governmental action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government interest, including the additional burdens that added procedural safeguards would entail.

[11] 166 Wn.2d 898, 904 n.3, 215 P.3d 201 (2009); *cf. Born v. Thompson*, 154 Wn.2d 749, 117 P.3d 1098 (2005).

[12] 505 U.S. 437, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992).

[13] 505 U.S. at 446.

[14] *Medina*, 505 U.S. at 451 ("[A] state procedure 'does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar.' "

required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused ha[s] been left to the legislative branch.' "[15]

¶11 Hurst argues that involuntary civil commitment is a " 'massive curtailment of liberty.' "[16] In *Addington v. Texas*,[17] the United States Supreme Court held that before an individual may be civilly committed to a mental institution under state law, the State must prove mental illness and present dangerousness by clear and convincing evidence. The Court held that clear and convincing evidence is the minimum standard upon which civil commitments rest.[18] The *Addington* Court "recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."[19]

¶12 But civil commitment generally differs from those cases where the issue is restoration of competency so that a defendant can face the charges against him. The State has an interest in prosecuting felony criminal charges and in protecting the public. Application of the preponderance standard to the issues of dangerousness and restorability of an incompetent felony defendant does not offend deeply rooted principles of justice. Historically, courts have used the preponderance of evidence standard to commit defendants indefinitely to restore competency.[20] No separate findings were necessary to justify such unlimited commitment for

(quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S. Ct. 330, 78 L. Ed. 674 (1934))).

[15] 505 U.S. at 453 (alterations in original) (quoting *Patterson v. New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)).

[16] *In re Harris*, 98 Wn.2d 276, 279, 654 P.2d 109 (1982) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972)).

[17] 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1979).

[18] *Addington*, 441 U.S. at 433.

[19] 441 U.S. at 425.

[20] *See Greenwood v. United States*, 350 U.S. 366, 76 S. Ct. 410, 100 L. Ed. 412 (1956) (indefinite commitment of incompetent defendant, despite slim chance of restoration).

restoration of competency until 1972 when the United States Supreme Court issued its decision in *Jackson v. Indiana.*[21]

¶13 In *Jackson*, the Court held that an incompetent defendant may not be committed indefinitely without further protection.[22] The Court opined that the State can hold a person for a reasonable period of time to determine his competency, and that it can hold a person for a further reasonable time for him to recover competency to stand trial, so long as the continued commitment is justified by progress towards that goal.[23]

¶14 Here, the medical testimony supported continued commitment for restoration. A "reasonable period" is that period of time which is necessarily required to effectuate the overriding state interest in prosecuting felonies and protecting the public. To that extent, the State may commit a person for a reasonable period of time to determine competency and to restore such competency, under the procedures outlined in chapter 10.77 RCW. The preponderance of evidence standard is adequate considering the deprivation of liberty is of a finite duration.

¶15 The statute also expressly provides for statutory safeguards to protect individuals from arbitrary governmental action. Under RCW 10.77.020, a person is entitled to assistance of counsel and, if indigent, counsel will be appointed; anyone subjected to an examination may retain an expert to perform an examination on his or her behalf; a defendant is entitled to have counsel present during any examinations; and a defendant may refuse to answer any questions he or she believes might be incriminating.

¶16 The defendant's reliance on *Born v. Thompson*[24] as requiring a higher standard of proof is misplaced. *Born's*

---

[21] 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

[22] 406 U.S. at 738.

[23] *Jackson*, 406 U.S. at 738.

[24] 154 Wn.2d 749, 117 P.3d 1098 (2005).

holding is clearly limited to misdemeanors. There, the court stated that "[t]he government simply does not have the same interest in prosecuting misdemeanant defendants as it does in prosecuting defendants charged with felonies."[25] The defendant here was charged with a felony.

¶17 The due process afforded in the statute is sufficient. The statute provides more than adequate safeguards to protect the defendant from unreasonable governmental interference. Accordingly, we hold that the jury was correctly instructed.

APPELWICK and SPEARMAN, JJ., concur.

Review granted at 171 Wn.2d 1016 (2011).