[No. 30003-0-III. Division Three. October 9, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. BLAYNE JEFFREY COLEY, *Appellant*.

*David L. Donnan* and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*D. Angus Lee*, *Prosecuting Attorney*, and *Carole L. Highland*, *Deputy*, for respondent.

¶1 SWEENEY, J. — There is a general presumption in this state that a defendant is competent to stand trial and assist in his own defense. Based on this presumption of competency, the defendant bears the burden of proof to show that he is incompetent to stand trial. Here, the court had concluded that the defendant was incompetent and sent him for evaluation and treatment. In the follow-up competency hearing, the court imposed the burden to prove incompetency on the defendant after erroneously concluding that the most recent order declared the defendant competent. We conclude that this was structural error and therefore reverse and remand for further proceedings.

## FACTS

¶2 Grant County sheriff's deputies responded following an incident between Blayne Coley and his girl friend on June 17, 2008. Deputies arrived at the home, and Mr. Coley told them that his girl friend's 13-year-old son, S.U., had molested him. The sheriff's office later learned of two prior incidents between Mr. Coley and S.U. The State charged Mr. Coley with two counts of second degree rape of a child.

¶3 Mr. Coley's competency became an issue during preliminary proceedings. His attorney, John Perry, moved on July 15, 2008, for an order that Mr. Coley's mental status be evaluated. The court granted the motion and ordered Mr. Coley transported to Eastern State Hospital. The hospital concluded that Mr. Coley was not competent to stand trial. The court stayed proceedings for 90 days on September 30, 2008. The court held a competency hearing on December 8,

2008, and, following the hearing, concluded that Mr. Coley had regained his competency to stand trial.

¶4 Mr. Coley asked the court if he could proceed pro se during the preliminary proceedings. In February 2009, the court instructed Mr. Coley on proceeding pro se with standby counsel and Mr. Coley elected to represent himself. At a March 5, 2009 hearing, Mr. Coley took the witness stand and proceeded with direct examination by questioning himself in the third person. On March 9, 2009, Mr. Coley elected not to proceed pro se and the court again appointed Mr. Perry to represent him.

¶5 The court again questioned Mr. Coley's competency in April 2009. On April 10, 2009, Mr. Coley waived his right to a jury trial and again moved to proceed pro se. The court held a hearing. Mr. Coley made several incomprehensible arguments. And the judge expressed concern over whether he was competent to proceed. The court ordered that Mr. Coley undergo another competency evaluation. On July 16, 2009, the court entered an order for a 90-day stay of the proceedings because Mr. Coley was not competent to proceed.

¶6 In October 2009, the case came before the court for entry of an order of competency. Apparently, the reports of competency conflicted. The State and Mr. Perry did not agree on whether Mr. Coley was competent or not. Mr. Perry did not have his expert's report at that time. However, Mr. Perry indicated that he would schedule a competency hearing. The court responded:

> THE COURT: I don't mean for a hearing. As I understand the statutory process once a competency evaluation has been done the question before the Court is is there some reason based on the information now available to doubt competency. There is not a reason given Eastern State's report. If Dr. [E. Clay] Jorgensen's report suggests that there is a reason then we would need to schedule a hearing otherwise I'll enter an order of competency. So I think we need to do that rather promptly in maybe a week if you think you'll have Dr. Jorgensen's report.

Report of Proceedings (RP) (Oct. 27, 2009) at 2-3. The court continued the hearing for defense counsel to secure and present the report.

¶7 On November 3, 2009, there was a follow-up hearing before a different judge. Mr. Perry indicated that the defense expert disagreed with the recent assessment received from Eastern State Hospital. Also Mr. Coley believed he was competent. But his lawyer, Mr. Perry, thought it was his responsibility to request an evidentiary hearing on competency. The court was not sure how to proceed and asked counsel to research what kind of competency hearing would be required.

¶8 On November 9, 2009, the judge concluded that the court initially determines necessity (low-threshold), and then a jury decides the issue of competency. Mr. Perry cited to volume 12, section 907 of *Washington Practice*. RP (Nov. 9, 2009) at 3. It states:

> When the issue of the defendant's competency to stand trial is raised, the issue is determined by the court, and if neither the prosecutor nor defense counsel contests the findings contained in the report, the judge may make his determination on the basis of the report. However, if the report of the court-appointed experts is contested, the court must hold a hearing.
>
> An accused has the burden of showing that he or she is incompetent to stand trial by a preponderance of the evidence. This proof requirement is based upon the presumption of sanity.
>
> At that hearing, the experts or professional persons who joined in the report may be called as witnesses. Both the prosecution and the defendant may summon any other qualified expert or professional persons to testify. The rules of evidence are applicable at the hearing.

12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 907, at 177-78 (3d ed. 2004) (footnotes omitted). Mr. Perry thought the jury must determine competency. The court continued the hearing for another week in order to determine its role in any further compe-

tency hearing. The court continued the case several times after November 2009. At a March 30, 2010 hearing before the Honorable Evan Sperline, Mr. Perry contested a proposal to have the judge decide competency solely on the reports:

> MR. PERRY: Your Honor Dr. Jorgensen's report which it [sic] states that it is his opinion that Mr. Coley was not competent to proceed to trial or is not competent was done in October of 2009. There has been, there has been no competency restoration formally that I am aware of since that day. I would like Dr. Jorgensen to update that information. And so [ . . . . ]
>
> THE COURT: I don't blame you at all[;] that makes sense.

RP (Mar. 30, 2010) at 1. The parties later agreed that the judge would rule on whether Mr. Coley was competent. *Id.*

¶9  The competency hearing took place before the Honorable John M. Antosz on June 11, 2010. Mr. Perry told the court the State had the burden to prove competence because the most recent order declared Mr. Coley incompetent. The court asked for legal authority on the burden of proof, and the State pointed the court to volume 12, section 907 of *Washington Practice*. RP (June 11, 2010) at 6-7. The court then discussed the matter with counsel:

> THE COURT: Before I look at that, Mr. Perry, I think your position is based in part at least on a court order that found Mr. Coley to be incompetent; is that right?
>
> MR. PERRY [Defense Counsel]: Yes, sir.
>
> THE COURT: Okay. What's the date of that order?
>
> MR. PERRY: Well, there is an order — there was an order on April 21st referring Mr. Coley at the basically sua sponte direction of the court after an order of competency to Eastern for evaluation. There was then a report from Dr. [William] Grant indicating that Mr. Coley was not competent. There's a report by Dr. Jorgensen indicating that he was not competent. And then there was a report —
>
> THE COURT: Pardon me, but is the status of this that there was an order of competency and then Judge Sperline asked for another evaluation; is that the status?

MR. PERRY: That is the status.

THE COURT: *Okay. What I understood you to be saying was that there was actually an order of incompetency. That's not the case. Instead there's an order of competency and then Judge Sperline had some questions about Mr. Coley's competency, and there were some more evaluations done.*

MS. HIGHLAND [Deputy Prosecutor]: Yes.

THE COURT: Do you agree with that also, Counsel?

MR. PERRY: I do.

THE COURT: Okay.

MR. PERRY: And the most recent series of evaluations —

THE COURT: *Well, what I need to know right now is the date of the order of competency. What date was that entered?*

MS. HIGHLAND: *December 9th, 2008, your Honor.*

THE COURT: *Thank you. I'll look for that and mark it in the file.*

*That's pleading number 41, which I'll tab in the file. It's an order of competency.* And I do understand after that date Judge Sperline had questions, that's evident in the reports themselves. So okay.

*And then, Mr. Perry, I will allow you to make an opening statement, but first I do need to address the burden of proof and what the law says on that. So I'll look to Ferguson, which is Volume 12 of Washington Practice, Section 907; is that correct?*

MS. HIGHLAND: Yes, your Honor. And in mine it's page number 178.

THE COURT: Okay. Thank you. I'll read that.

MS. HIGHLAND: And it would be the first full paragraph.

THE COURT: Is your Section 908 — did you say 908?

MS. HIGHLAND: I said 907, your Honor.

THE COURT: Oh, okay.

MS. HIGHLAND: On 178. Perhaps that's where I — and it would be the first full paragraph on page 178.

THE COURT: Section 907 is page 176 on the —

MS. HIGHLAND: Right. It goes through to the middle of 178.

THE COURT: Okay.

MS. HIGHLAND: It's quite a long section.

THE COURT: *I see the second to the last paragraph of Section 907 states that "An accused has the burden of showing that he or she is incompetent to stand trial." Is that the section?*

MS. HIGHLAND: Yes, your Honor.

THE COURT: Okay. I'll tab that. And that's based on RCW 10.77.090(2). I'll look at the pocket part to see if there's any updates to that.

There's no update to that in the pocket part.

And also cited is the case of Medina vs. California, a 1992 Supreme Court case, and Cooper vs. Oklahoma, a 1996 United States Supreme Court case.

*Okay. Mr. Perry, why do you take the position, then, that the burden of proof is on the state?*

MR. PERRY: *Your Honor, I'll withdraw that.*

. . . .

THE COURT: Thank you, Mr. Perry.

*Miss Highland, I want to thank you again for the citation to Ferguson, that not only helped me understand the very important question that the judge has is, okay, who's got the burden of proof and what is that burden?* And then you've also then cited me to probably a very helpful section of Washington Practice anyway just generally on this hearing. We don't conduct these hearings every day, so I appreciate that.

Do you wish to make any opening statement?

MS. HIGHLAND: No, your Honor.

THE COURT: *Okay. Thank you.*

*I do find that the defendant has the burden of proof in the competency hearing to establish his lack of competency. Maybe there would be a different question if a defendant is originally found to be incompetent and then there's a hearing. Perhaps. Perhaps not. But here there's already an order that finds him to be competent and I do understand that Judge Sperline later had some questions about competency.* But that's for me to decide today based upon the evidence produced in court whether or not Mr. Coley is competent to stand trial.

*So I think I need to hear from the defendant first, since the defendant has the burden of proof to put on evidence.*

RP (June 11, 2010) at 7-14 (emphasis added).

¶10 The court proceeded with the hearing. Mr. Perry called Dr. E. Clay Jorgensen, a clinical psychologist. During the direct examination of Dr. Jorgensen, Mr. Coley objected and the court reminded him that only his attorney could object. The State objected to "the reference to reports prior to the *finding of competency by the court in December of 2008.*" RP (June 11, 2010) at 25 (emphasis added). Ultimately, Dr. Jorgensen opined that Mr. Coley understood the nature of the proceedings against him but could not assist his attorney in his defense.

¶11 The State then called Dr. William Grant, a psychiatrist employed by Eastern State Hospital. Dr. Grant opined that Mr. Coley understood the nature of the proceedings against him. He further opined that Mr. Coley was capable of assisting in his defense but maybe was not willing to do so. The court then viewed a 57-minute video interview of Mr. Coley conducted by Dr. Grant. The video concluded and the court questioned Dr. Grant.

¶12 Next, Mr. Coley, against Mr. Perry's advice, took the stand and testified that he believed he was competent. He testified that he understood the nature of the proceedings; however, the court reminded him several times to stay on topic. In response to a specific inquiry from the court, Mr. Coley testified that he could provide his attorney with information and would cooperate with his case.

¶13 At the close of testimony, the court directed Mr. Perry to give his closing argument first because the defendant had the burden of proof. Following Mr. Perry's closing statement, Mr. Coley again requested to represent himself. But the judge noted that Mr. Coley's answers to questions about pro se representation could influence how he decided competency. And the court refused to allow Mr. Coley to represent himself.

¶14 The court concluded that Mr. Coley understood the nature of the proceedings against him. The court considered the testimony of the two doctors and Mr. Coley and the video interview of Mr. Coley and observed Mr. Coley's demeanor in court and concluded that Mr. Coley could assist counsel and was competent to go forward. The court did not mention the burden of proof in its oral ruling. On June 22, 2010, the court entered an order of competency.

¶15 Mr. Coley's first trial resulted in a mistrial. After the second trial, a jury returned a guilty verdict on both counts of second degree rape of a child. At sentencing on May 10, 2011, Mr. Perry raised the issue of competency and asked for time. The court sentenced Mr. Coley to an indeterminate sentence between 120 months and life.

## DISCUSSION

### BURDEN OF PROOF—COMPETENCY

¶16 Mr. Coley contends that he was denied due process of law because the court placed the burden of proof on him to prove he was incompetent when he was incompetent. The State responds that while the law is unclear as to who had the burden of proof, the court heard from both sides and "[a]ny error is thus theoretical and not manifest." Br. of Resp't at 9.

¶17 Whether Mr. Coley or the State bore the burden of proof is a question of law that we will review de novo. *See In re Det. of Petersen*, 145 Wn.2d 789, 807, 42 P.3d 952 (2002). "[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). This prohibition "has deep roots in our common-law heritage." *Id.* at 446. Washington law builds on this federal standard and "affords greater protection by providing that '[n]o incompetent person may be tried, convicted, or sentenced for the commission of an offense so long as such

incapacity continues.' " *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 862, 16 P.3d 610 (2001) (alteration in original) (quoting RCW 10.77.050). A person is incompetent if he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." Former RCW 10.77.010(14) (2005).

¶18 The United States Supreme Court has held that states may impose the burden to prove incompetence on the defendant. *Medina*, 505 U.S. at 449. It is a bit murky as to who bears the burden of proof here in Washington. The Supreme Court, in *State v. Benn*, held that "[a] criminal defendant *may* be required to prove his incompetence." 120 Wn.2d 631, 661, 845 P.2d 289 (1993) (emphasis added) (citing *Medina*, 505 U.S. 437). But no case holds that a defendant *must* prove incompetency. Nor does the language of RCW 10.77.086 help. It says that "[i]f the court finds by a preponderance of the evidence that a defendant charged with a felony is incompetent," then it may order the defendant committed for treatment. RCW 10.77.086(3). Nor does the statutory scheme set out in chapter 10.77 RCW address the burden of proof when a defendant has been declared incompetent.

██ ¶19 There is a presumption that an incompetent person remains incompetent until adjudicated otherwise. *Cf. State v. Platt*, 143 Wn.2d 242, 251 n.4, 19 P.3d 412 (2001) (noting that "Washington law since 1905 has presumed the mental condition of a person acquitted by reason of insanity continues"); *In re Estate of Miller*, 10 Wn.2d 258, 268, 116 P.2d 526 (1941) (adjudicating someone as insane carries a presumption that the person is incompetent to make a will); *Criez v. Sunset Motor Co.*, 123 Wash. 604, 606, 213 P. 7 (1923) (continuing presumption of lack of testamentary capacity once general insanity is shown). Indeed, in other contexts, after a declaration of incompetency, the burden of proving that competency has been restored shifts—i.e., the burden of proving "mental restoration . . . shifts to him who

asserts such facts." *In re Estate of Peters*, 43 Wn.2d 846, 862, 264 P.2d 1109 (1953) (addressing who has the burden to establish testamentary capacity once a lack thereof is established).

¶20 Other jurisdictions are in accord. *State v. Chavez*, 143 N.M. 205, 211-12, 174 P.3d 988 (2007) ("the long-standing rule [is] that a criminal defendant initially bears the burden of proving by a preponderance of the evidence that he or she is incompetent to stand trial, whereupon the burden shifts to the State to prove by the same standard, a preponderance of the evidence, that the defendant is competent to stand trial" (emphasis omitted)); *King v. State*, 387 So. 2d 463, 464 (Fla. Dist. Ct. App. 1980) (once a court rules that a defendant is incompetent, a presumption of incompetency continues and the burden to prove competency shifts to the State); *Manning v. State*, 730 S.W.2d 744, 748 (Tex. Crim. App. 1987) (Under Texas law, when there is a prior, outstanding order that declares the defendant incompetent to stand trial, the State has to prove *beyond a reasonable doubt* that the defendant is competent before proceeding to trial.).

¶21 Here, the court placed the burden of proof on Mr. Coley. That decision was based on the understanding that the most recent order was in December 2008, and it declared Mr. Coley competent. It was not the most recent order. The most recent order was dated July 16, 2009, and it declared Mr. Coley incompetent to stand trial and stayed the proceedings for 90 days. Clerk's Papers at 38-39; RP (July 16, 2009) at 3. We conclude then that the operative presumption should have been that Mr. Coley was incompetent to stand trial. And the burden should then have shifted to the State to prove that he was competent. This is consistent with our reading of this statute. Former RCW 10.77.084 (2007) states, in part:

(1)(a) If at any time during the pendency of an action and prior to judgment the court finds, following a report as provided in RCW 10.77.060, a defendant is incompetent, the court shall

order the proceedings against the defendant be stayed except as provided in subsection (4) of this section.

. . . .

(c) At the end of the mental health treatment and restoration period, or at any time a professional person determines competency has been, or is unlikely to be, restored, the defendant shall be returned to court for a hearing. *If, after notice and hearing, competency has been restored, the stay entered under (a) of this subsection shall be lifted.* If competency has not been restored, the proceedings shall be dismissed. If the court concludes that competency has not been restored, but that further treatment within the time limits established by RCW 10.77.086 or 10.77.088 is likely to restore competency, the court may order that treatment for purposes of competency restoration be continued. Such treatment may not extend beyond the combination of time provided for in RCW 10.77.086 or 10.77.088.

(Emphasis added.)

¶22 The language in RCW 10.77.084 suggests that when the defendant returns from treatment, the hearing is to determine if "competency has been restored." Thus, when the defendant returns and the hearing proceeds, the presumption is necessarily that he is incompetent.

¶23 The procedure the court followed when it first declared Mr. Coley incompetent also supports this presumption. First, the court entered a 90-day stay that declared Mr. Coley incompetent. Then, the court held a competency hearing, ruled that Mr. Coley was competent, and entered an order to that effect. Here, prior to entry of a court order that Mr. Coley regained his competency, he was not competent or, at least, a presumption attached that he was not competent. Of course, there would be no need for the court to enter an order of competency for an already competent defendant.

¶24 Mr. Coley had a fundamental right not to stand trial while incompetent. And to require an incompetent defendant (someone who is presumably unable to understand the

proceedings or assist in his own defense) to prove that he remains incompetent is, for us, unconstitutional. *C.f. People v. Bender*, 20 Ill. 2d 45, 53-54, 169 N.E.2d 328 (1960) ("Let us assume that defendant is in fact unable to co-operate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof."). We conclude that the State bore the burden of proof to show that Mr. Coley's competence had been restored and the court erred when it concluded otherwise.

HARMLESS ERROR

¶25 Mr. Coley contends that the court's misallocation of the burden of proof here is not harmless. The State responds that there was no prejudice because the court heard evidence from both parties before it ruled.

■ ■ ¶26 The State bears the burden of showing that any error is harmless beyond a reasonable doubt. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). But structural error is never harmless. *State v. Levy*, 156 Wn.2d 709, 725, 132 P.3d 1076 (2006). That is because it is analytically impossible for any court of review to isolate and then evaluate the potential impact of an error that is structural:

> structural errors "infect the entire trial process." Structural errors are said to "defy" harmless error review because they "deprive defendants of basic protections without which a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." Such errors include total denial of counsel, a biased trial judge, racial discrimination in jury selection, denial of self-representation at trial, and denial of a public trial.

*State v. Zimmerman*, 130 Wn. App. 170, 176,121 P.3d 1216 (2005) (alteration in original) (citations and internal quota-

tion marks omitted) (quoting *Neder v. United States*, 527 U.S. 1, 8-9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). Our Supreme Court has recognized as much when it held that the proper course of action for the appellate court is to remand the case when a trial court places the burden of proof on the wrong party. *Nissen v. Obde*, 55 Wn.2d 527, 529-30, 348 P.2d 421 (1960). That court stated:

> [W]e are confronted with the question of whether to review the record to determine whether these findings are sustainable under a correct application of the burden of proof rule, or to remand the case to the trial court for reconsideration of the findings in conformity with the views expressed herein. Since it is the function of the trial court and not of this court to consider the credibility of witnesses and to weigh the evidence in order to determine whether it preponderates in favor of the party having the burden of proof, we are convinced that the proper course for us to follow is to remand.

*Id.* Other jurisdictions are in accord with the general rule " 'that it is reversible error to place the burden of proof on the wrong party or to place an unwarranted burden of proof on one party.' " *Boles Trucking v. United States*, 77 F.3d 236, 241 (8th Cir. 1996) (quoting *Voigt v. Chi. & Nw. Ry.*, 380 F.2d 1000, 1004 (8th Cir. 1967)); *see also Carvalho v. Raybestos-Manhattan, Inc.*, 794 F.2d 454, 455 (9th Cir. 1986) ("Although Hawaii has not addressed the issue, other jurisdictions have consistently recognized that placing the burden of proof on the wrong party in a civil action generally constitutes reversible error."); *Mitchell v. United States*, 396 F.2d 650, 651 (6th Cir. 1968) (reversing and remanding when the trial court placed the burden of proof on the wrong party); *Ming Luen Hui v. Phila. Parking Auth.*, 913 A.2d 994 (Pa. Commw. Ct. 2006) ("Where the fact-finder places the burden of proof on the wrong party, this court cannot determine whether the fact-finder would have reached the same conclusions under the correct allocation of the burden of proof. Thus, it is appropriate to vacate the fact-finder's order and remand for a determination with the burden of

192

proof placed on the correct party." (citation omitted)); *Kirchner v. Wilson*, 251 Neb. 56, 60, 554 N.W.2d 782 (1996) ("since an instruction which misstates the burden of proof has a tendency to mislead the jury, it is prejudicially erroneous"); *Atl. & Pac. Ins. Co. v. Barnes*, 666 P.2d 163, 165 (Colo. App. 1983) ("The proper allocation for the burden of proof is a substantial right of the parties. It is reversible error if the trial court allocates the burden of proof to the wrong party.").

¶27 Certainly, when the defendant is unable to assist counsel or understand the proceedings, "[t]he entire conduct of the trial from beginning to end is obviously affected." *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). Thus, when a court assigns the burden of proof to show incompetency to an already incompetent defendant, the entire proceeding is tainted.

¶28 Here, the trial court allocated the burden of proof to Mr. Coley, who, by RCW 10.77.084, was already legally incompetent. The court agreed that who carried the burden of proof might be different if Mr. Coley were incompetent. This was structural error and therefore not harmless.

¶29 We reverse and remand for further proceedings.

Siddoway, A.C.J., concurs.

¶30 Brown, J. (dissenting) — In 2009, after an initial Eastern State Hospital admission and report of incompetency, the court, without contest, adopted the Eastern State Hospital recommendations and stayed proceedings before ordering an additional 90-day commitment in Blayne Coley's case to permit possible restoration of his competency. Later in 2009, after Mr. Coley disputed an Eastern State Hospital staff report that he was then competent, the court asked counsel to research what kind of competency hearing was required. Mr. Coley quoted volume 12, section 907 of *Washington Practice* while arguing:

MR. PERRY: [I]f the report of the court appointed experts is contested the court must hold a hearing.

. . . .

Mr. PERRY: "[T]he accused has the burden of showing he or she is incompetent to stand trial by a preponderance. This proof requirement is based on the presumption of sanity. At the hearing 'the next paragraph,' the experts or professional persons who joined in the report may be called as witnesses. The prosecution and defendant may both summon any other qualified expert or professional to testify." And there they cite [RCW] 10.77.010. "The rules of evidence are applicable at the hearing."

Report of Proceedings (RP) (Nov. 9, 2009) at 3.

¶31 At the June 2010 competency hearing, Mr. Coley's attorney, John Perry, asserted the State had the burden to prove competence. The State pointed to volume 12, section 907 of *Washington Practice*. The court said:

I see the second to the last paragraph of Section 907 states that "An accused has the burden of showing that he or she is incompetent to stand trial." Is that the section?

RP (June 11, 2010) at 9. The State confirmed it was. Mr. Perry then withdrew his argument that the burden was on the State. Considering Mr. Coley's concession, I do not believe it is now proper for Mr. Coley to change his position here.

¶32 Moreover, at the competency hearing, the court considered extensive evidence, including testimony from opposing experts when considering the contest to the Eastern State Hospital experts' report. Dr. E. Clay Jorgensen, a defense clinical psychologist, opined Mr. Coley understood the nature of the proceedings against him but could not assist his attorney in his defense. Eastern State Hospital psychiatrist Dr. William Grant opined Mr. Coley understood the nature of the proceedings against him and was capable of assisting in his defense, but that he might not be willing to assist. Mr. Coley testified he was competent and understood the nature of the proceedings. Mr. Coley testified he

could provide his attorney with information and would cooperate with the attorney and the attorney's decisions regarding his case. The court allowed Mr. Coley to his advantage to argue first in contesting the Eastern State Hospital report, "since the defendant has the burden of proof." RP (June 11, 2010) at 137. The court, considering all, found Mr. Coley competent to stand trial.

¶33 RCW 10.77.084(1)(a) allows for a stay of proceedings, as here, when an incompetency report under RCW 10.77.060 is returned by the court appointed experts. After a defined mental health treatment and restoration period has elapsed, the court at a hearing considers again the appointed experts' report. Here, the experts reported Mr. Coley's competency had been restored and the stay was lifted. RCW 10.77.084(1)(c) details this process, and, as explained above, the contested hearing concluded with a finding that the Eastern State Hospital report correctly determined Mr. Coley's competency had been successfully restored. The issues at the restoration hearing are, in my view, exactly the same for the parties initially: whether the report correctly assessed Mr. Coley's competency. In the end, Mr. Coley asserted he was incompetent while the State defended the Eastern State Hospital report of competency. I do not understand this record to show the trial court incorrectly allocated the burden of proof to Mr. Coley. The process is the one traditionally followed in the trial courts and was rendered under standard instructions.

¶34 I do not agree with Mr. Coley that any due process or structural error occurred. Chapter 10.77 RCW provides the process a court must follow in making competency determinations. Failure to comply with these procedures violates due process. *State v. Heddrick*, 166 Wn.2d 898, 903-04, 215 P.3d 201 (2009). But no due process violation is shown in this record.

¶35 Mr. Coley's argument relies entirely on his assertion "the State bears the burden of proving competency" under chapter 10.77 RCW. Br. of Appellant at 5-6 (citing *State v.*

*Wicklund*, 96 Wn.2d 798, 805, 638 P.2d 1241 (1982); *Born v. Thompson*, 154 Wn.2d 749, 753-54, 117 P.3d 1098 (2005); *State v. Hurst*, 158 Wn. App. 803, 811, 244 P.3d 954 (2010), *aff'd*, 173 Wn.2d 597, 269 P.3d 1023 (2012)). His assertion is incorrect. In *Wicklund*, our state Supreme Court noted the trial court had placed the burden of proving Mr. Wicklund's competency on the State; it did not rule that the statute required the burden be borne by the State. *Wicklund*, 96 Wn.2d at 805. In *Born* and *Hurst*, the issue was whether the State had met the burden of proving the defendant should be committed to determine competency, not whether the defendant should be tried. *Born*, 154 Wn.2d at 753-54; *Hurst*, 158 Wn. App. at 811. Moreover, *Born* and *Hurst* dealt with the standard of proof, not the burden of proof. *Born*, 154 Wn.2d at 753-54; *Hurst*, 158 Wn. App. at 811.

¶36 While chapter 10.77 RCW does not specify which party should bear the burden, the often cited *Washington Practice* treatise, relied upon by the trial court, indicates that defendants bear the burden of proving incompetence. *See* 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 907, at 178 (3d ed. 2004) ("An accused has the burden of showing that he or she is incompetent to stand trial by a preponderance of the evidence. This proof requirement is based upon the presumption of sanity." (footnote omitted)). Ferguson cited United States Supreme Court cases *Medina v. California*, 505 U.S. 437, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992), and *Cooper v. Oklahoma*, 517 U.S. 348, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996). Both cases held a court could constitutionally place the burden of proof on the defendant. *Medina*, 505 U.S. at 449; *Cooper*, 517 U.S. at 369.

¶37 And, our state Supreme Court has reasoned:

> It is well settled that the law will presume sanity rather than insanity, competency rather than incompetency; it will presume that every man is sane and fully competent until satisfactory proof to the contrary is presented.

*Grannum v. Berard*, 70 Wn.2d 304, 307, 422 P.2d 812 (1967) (citing 29 Am. Jur. *Insane and Other Incompetent Persons* § 132, at 253 (1960)). Even so, our state Supreme Court has yet to rule upon which party bears the burden of proving competence or incompetence. *See State v. Benn*, 120 Wn.2d 631, 661, 845 P.2d 289 (1993).

¶38 "The trial court has wide discretion in judging the mental competency of a defendant to stand trial." *State v. Ortiz*, 104 Wn.2d 479, 482, 706 P.2d 1069 (1985). A trial court's decision will not be reversed absent abuse of discretion. *Benn*, 120 Wn.2d at 662. Additionally, it is the sole province of the fact finder, here the trial court, to weigh evidence. *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999) (citing *State v. Snider*, 70 Wn.2d 326, 327, 422 P.2d 816 (1967)). The court conducted a lengthy competency hearing, and both parties presented evidence to support their arguments. As the State argues, any error is therefore merely theoretical. *State v. Kirkman*, 159 Wn.2d 918, 934-35, 155 P.3d 125 (2007). The court followed the procedural requirements of RCW 10.77.086(2) and found the State's evidence, together with its observation of Mr. Coley, persuasive. The record supports the trial court's reasoning that Mr. Coley had the ability to understand the proceedings and assist in his defense.

¶39 Considering all, I would hold the trial court did not err in its competency determination process. Additionally, I would reach and reject Mr. Coley's self-representation contentions. Thus, I would affirm. Therefore, I respectfully dissent.

Review granted at 176 Wn.2d 1024 (2013).