IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31318-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRANDON L. VANWINKLE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Brandon VanWinkle appeals his conviction for

custodial assault, claiming he was incompetent to stand trial and represent himself. He

also argues the trial court erred by failing to enter written findings of fact supporting its

CrR 3.5 ruling. Because we can discern the basis of the trial court's CrR 3.5 ruling from

its oral decision, we hold that the trial court's failure to enter written findings was

harmless error. We also hold that the trial court did not abuse its discretion when it

determined that Mr. VanWinkle was competent to stand trial and was entitled to self-

representation. We therefore affirm.

FACTS

While incarcerated at the Benton County Jail, Mr. VanWinkle assaulted a jail sergeant. The State charged him with custodial assault. At arraignment, Mr. VanWinkle objected to the court's appointment of counsel for him, stating, "I don't need no counsel. I am going to do this myself. [Counsel] will just get in my way." Report of Proceedings (RP) (Aug. 2, 2012) at 2. On August 9, 2012, Judge Craig Matheson addressed Mr. VanWinkle's request to waive counsel. Mr. VanWinkle confirmed that he wished to represent himself.

The court had the following exchange with Mr. VanWinkle:

> THE COURT: . . . [W]e need to address this issue on the attorney. If you're innocent, you need an attorney more than if you're guilty.
> MR. VANWINKLE: No, it would just get in my way. I've been to business law.
> THE COURT: How far did you go in college?
> MR. VANWINKLE: Far enough to beat this case.
> THE COURT: Did you finish high school?
> MR. VANWINKLE: Oh, yeah.
> THE COURT: Do you know anything? Do you know, for example, what you're facing in terms of punishment in this case?
> MR. VANWINKLE: Most definitely. You just told me. Five years.
> THE COURT: And do you know the standard range?
> MR. VANWINKLE: That's neither here nor there really. It's really going—it's going to be real simple. It probably won't even make it past the [CrR] 3.5 hearing, but if you guys let it do it, then it does.
> THE COURT: And you're able to read and write English?
> MR. VANWINKLE: Very well.

> THE COURT: And do you have some experience with the court system?
>
> MR. VANWINKLE: Directly, yeah, a lot.
>
> THE COURT: Do you understand that, if you come into court representing yourself, you will not be assisted by the judge?
>
> MR. VANWINKLE: Yeah. I don't need no assistance.
>
> THE COURT: And you will be held to the standard of a practicing attorney. So the errors you make will not be forgiven on appeal. Do you understand?
>
> MR. VANWINKLE: Yeah, we won't have to worry about that.

RP (Aug. 9, 2012) at 3-4.

The trial court accepted Mr. VanWinkle's waiver of counsel, finding he had the ability, "at least nominally," to represent himself. RP (Aug. 9, 2012) at 4. The court advised Mr. VanWinkle that Michelle Alexander was available to assist him as standby counsel. Mr. VanWinkle responded, "OK. Yeah, I don't need that. Thank you, though." RP (Aug. 9, 2012) at 6.

On August 23, 2012, the parties were back in court before Judge Matheson for a CrR 3.5 hearing. The State moved to continue the hearing because Ms. Alexander and one of the State's witnesses were unavailable. Mr. VanWinkle advised the court that he did not need Ms. Alexander to be present because "I'm pro se, and I don't need a lawyer present. I am the lawyer, and I am not even going to have her at the trial." RP (Aug. 23, 2012) at 8. Mr. VanWinkle then became agitated and advised the judge, "This is your courtroom, you're working for me." RP (Aug. 23, 2012) at 9. After the court advised

3

Mr. VanWinkle the hearing was being continued one week, Mr. VanWinkle made multiple discovery demands, including that witness interviews be scheduled, that disciplinary records be turned over for jail officers involved in the incident, that criminal histories be provided for all witnesses, and that multiple witnesses be subpoenaed on his behalf, including "Mr. Obama" and Christina Aguilera. RP (Aug. 23, 2012) at 11.

In response to Mr. VanWinkle's references to Ms. Aguilera and President Obama as witnesses, the State expressed concern about Mr. VanWinkle's competency. Mr. VanWinkle responded by telling the deputy prosecutor, "You might want to go read the Bible." RP (Aug. 23, 2012) at 12. The court stated it would consider a motion for an evaluation at Eastern State Hospital, to which Mr. VanWinkle replied: "Do you guys know who I am?" RP (Aug. 23, 2012) at 14. He then stated that he was "Jesus Christ. Resurrected" and that his "birthday's 7-11. I was born and weighed 7-11. If you guys don't know who I am, you better go read the Bible and go to Ezekiel 7:11,[1] and when you guys get done reading that tonight, you'll know what's going to happen." RP (Aug. 23, 2012) at 14. The court entered an order for a mental health evaluation.

---

[1] Ezekiel 7:11 provides: "Violence has grown into a rod to punish wickedness; none of the people will be left, none of that crowd—no wealth, nothing of value." Zondervan Study Bible, New International Version (2002 ed.).

4

On October 18, 2012, the parties were back in court after Dr. Randall Strandquist,

a licensed psychologist at Eastern State Hospital completed an evaluation of Mr.

VanWinkle. Dr. Strandquist concluded that Mr. VanWinkle did not have a mental

disease or defect and had "the capacity to understand court proceedings and productively

participate in his own defense." Clerk's Papers (CP) at 30. Dr. Strandquist's report

concluded:

> Over the course of the interview, Mr. Vanwinkle demonstrated that he has
> sufficient knowledge of court proceedings and the roles of the participants
> involved with these proceedings. He was able to explain the roles and
> responsibilities of the judge, defense attorney, prosecuting attorney,
> witness[es], and jury.
>
> He is able to identify his attorney. . . .
>
> Mr. VanWinkle knows and can explain the concept of a plea bargain. He is
> aware of his plea options regarding these charges. He knows that
> sentencing typically follows a guilty plea and a trial typically follows a not
> guilty plea. He was able to correctly identify the crimes for which he has
> been charged . . . .
>
> Mr. Vanwinkle insisted that he is innocent of the charges. He said he
> intends on defending himself by demonstrating the lack of evidence and
> challenging the credibility of the alleged victim. There was no delusional or
> psychotic content when discussing his charges or his plan for defense.

CP at 33-34.

Dr. Strandquist described Mr. VanWinkle as having antisocial personality disorder

with narcissistic traits. His report noted that Mr. VanWinkle had no history of being

treated for or diagnosed with any mental health disorders. The report detailed Mr. VanWinkle's behavior while at Eastern State Hospital, including being fully oriented and alert, friendly and cooperative at times, but then becoming rude and threatening when ward rules and limitations were enforced. The report documented that over the course of several days Mr. VanWinkle threatened staff, attempted to assault a staff member, and assaulted another patient.

At an October 18, 2012 hearing to address Mr. VanWinkle's competency to stand trial, Ms. Alexander addressed the court, stating that Mr. VanWinkle was adamant that he wanted to represent himself. She also stated that if she was representing Mr. VanWinkle instead of acting only as standby counsel, she would request a second competency evaluation. The following exchange then took place:

> THE COURT: We have a report indicating he's competent?
> [THE STATE]: Yes, your Honor.
> THE COURT: All right. Then, Mr. VanWinkle, I guess at this stage you can decide to have an additional evaluation with regard to your competency, or you can proceed to trial. How would you like to proceed?
> MR. VANWINKLE: I have been ready for trial since this alleged assault. I actually when [sic] I went up there to do this evaluation.
> THE COURT: I just need an answer to my question. Do you want an additional evaluation?
> MR. VANWINKLE: I'm ready for trial right now.
> THE COURT: Would you answer me on the record? Do you want an additional—
> MR. VANWINKLE: Oh, no, your Honor, I don't need another—
> THE COURT: Then we'll go to trial. We'll set trial dates.

RP (Oct. 18, 2012) at 15-16.

The court entered an order of competency.

On November 1, 2012, before Judge Robert Swisher, Ms. Alexander made a lengthy record that Mr. VanWinkle did not want her assistance as standby counsel and asked that she be removed from the case. Ms. Alexander also stated that she continued to believe that Mr. VanWinkle was not competent to stand trial. The court noted that competency had already been addressed by Judge Matheson at a prior hearing and declined to readdress it. The court ruled that Ms. Alexander would not be removed as standby counsel.

The court then proceeded to the CrR 3.5 hearing. The State called a total of four witnesses: the jail officer who was the victim of the assault and the three jail officers who were present when this occurred. Mr. VanWinkle cross-examined each of the officers, who all stated that he was yelling threatening and derogatory statements at them after they moved him to a new cell. All four also testified that Mr. VanWinkle's statements were not in response to any questions by jail officers. After being advised by the court about his rights regarding testifying at the CrR 3.5 hearing, Mr. VanWinkle elected not to testify. In closing argument, Mr. VanWinkle commented that "all [the officers'] stories are mix-matched. . . . And pretty much I'll bring in the files of all their statements. They

7

are all three different statements. . . . So I mean I'm ready for trial, really."

RP (Nov. 1, 2012) at 52. The court ruled that Mr. VanWinkle's statements were

admissible, finding "[t]hey were not in response to questions." RP (Nov. 1, 2012)

at 52.

Trial commenced on November 5, 2012, before Judge Bruce Spanner. Before

calling in the jury, the court addressed security issues at trial and the State's motions in

limine. Mr. VanWinkle repeated that he would not act out in front of a jury, stating that,

"We're in trial today, and to do something, act out in some kind of manner that would be

inappropriate in the courtroom would be—it wouldn't be beneficial to my trial. . . . I

think that would be—it would be very unsmart (sic) on my end." RP (Nov. 5, 2012,

morning session) at 4.

During the hearing on courtroom security, Mr. VanWinkle cross-examined the

State's only witness, Lieutenant Robert Guerrero, including whether his testimony was

coached by the State and why Mr. VanWinkle was a security threat. At the end of his

cross-examination, Mr. VanWinkle advised the court that he did not object to the

courtroom security measures being suggested by Lieutenant Guerrero with the exception

that he wanted to be able to move freely about the courtroom when presenting his case.

When the court ruled that the jury should be removed in lieu of conducting any

8

proceedings at sidebar and that both Mr. VanWinkle and counsel for the State should ask permission during trial to leave counsel table, Mr. VanWinkle responded to both rulings, "That's perfectly fine." RP (Nov. 5, 2012, morning session) at 36.

The court next addressed the State's motions in limine. During lengthy discussions over these issues, Mr. VanWinkle became agitated when the State's motions were repeatedly granted. Mr. VanWinkle accused a judge from a previous hearing of conspiring with the deputy prosecutor, stated that he, Mr. VanWinkle, worked for the federal government, and claimed that he was Jesus Christ. At that point, the State asked the court to make a record about competency.

The court asked standby counsel, Ms. Alexander, to address the court regarding competency, and Mr. VanWinkle responded, "We've already done this, your Honor. We've already done this with two different judges." RP (Nov. 5, 2012, morning session) at 76. Ms. Alexander advised the court that Mr. VanWinkle had declined the court's invitation to obtain a second competency evaluation at a prior court hearing, but that based on his behavior in court, she would ask for a second evaluation if Mr. VanWinkle was her client. Mr. VanWinkle responded that he did not feel that Ms. Alexander was a good attorney because she did not represent his interests. Mr. VanWinkle also pointed out that another deputy prosecutor who had prosecuted him in several previous cases was

in the courtroom and she could attest that he was competent to stand trial from her

previous interactions with him. Mr. VanWinkle then stated:

> Just to help you guys out, okay, what competency is, is to figure out
> if an inmate is competent to stand trial has to know has to know exactly
> what she does in the courtroom (indicating), what she does in the courtroom
> (indicating), what she does in the courtroom (indicating), what she does in
> the courtroom (indicating). What I—what place I take in the courtroom and
> what your ruling as a judge is.
> That's what competency is, to know, is what it means in trial. It's
> what all of us—what all of us we take place, what part we play in the
> courtroom. That's competency, okay, if you guys need to know. That's
> what competency is, and I went through several tests up there with the
> doctors up there in, um, Eastern State. Talked to 'em. They're like,
> "You're perfectly fine. You're perfectly—you understand everything that
> goes on in the courtroom."
> Of course I know everything that goes on in the courtroom. I took
> law at Pierce College. Business law. For two years I took business law just
> for this simple fact . . . .

RP (Nov. 5, 2012, morning session) at 80-81.

After Mr. VanWinkle made additional comments, the court found that even if Mr.

VanWinkle's statements indicated that he was delusional or trying to strong arm the court,

they did not have any impact on his competency.

Court reconvened that afternoon and the parties proceeded to select a jury. Ms.

Alexander continued to be present as standby counsel and over the course of the trial, she

conferred with Mr. VanWinkle on a number of occasions at his request. Mr. VanWinkle

actively participated in jury selection, asking jurors questions about whether they or their

family members had ever been victims of assault, whether they had relatives in law enforcement, whether they had relatives who were incarcerated, and whether jurors had opinions about police corruption. Mr. VanWinkle challenged a juror for cause who was having difficulty hearing and utilized six of his seven peremptory challenges.

Trial reconvened the following morning. Outside the jury's presence, the State complained that Mr. VanWinkle was ignoring the court's rulings regarding the motions in limine. The court reminded Mr. VanWinkle that he must follow the court's rulings and that he was being held to the same standard as an attorney.

The State called its first witness, Lieutenant Guerrero, who had previously testified the day before at the courtroom security hearing. After the State's direct examination, Mr. VanWinkle cross-examined Lieutenant Guerrero extensively regarding jail procedures, security threats, and his supervisory duties.

The State next called Sergeant Dennis Schaefer, who testified that Mr. VanWinkle spit at him through an opening in Mr. VanWinkle's cell and that the spit landed on his head, face, and shoulder. Mr. VanWinkle conducted an extensive cross-examination of Sergeant Schaefer, which started the morning of November 6, 2012, and continued throughout the afternoon until court adjourned for the day. Mr. VanWinkle convinced the

11

court to allow him to present impeachment evidence against Sergeant Schaefer that had previously been ruled inadmissible.

At the conclusion of testimony on November 6, 2012, outside the presence of the jury, the court addressed five findings of contempt against Mr. VanWinkle that occurred throughout the day for not complying with court orders. When the court was leaving the bench for the day, Mr. VanWinkle referred to the judge as "home boy" and Mr. VanWinkle was found in contempt of court a sixth time. RP (Nov. 6, 2012, afternoon session) at 430-31. Prior to testimony resuming on November 7, 2012, Mr. VanWinkle apologized repeatedly to the court for any disrespect he had shown the court the previous two days. He stated that he was frustrated, anxious, and overwhelmed but would try to slow down and think about what he was saying before going forward. Mr. VanWinkle asked the court to reconsider its final contempt finding of the day since he was going to make a good faith effort to follow the court's rules and the court agreed to take that into consideration.

The jury next heard testimony from Officer Albert Montelongo. Mr. VanWinkle also cross-examined Officer Montelongo extensively about the incident in question and about security procedures. During the course of Mr. VanWinkle's lengthy cross-examination of Officer Montelongo, the court commented outside the presence of the jury

12

that it appreciated that Mr. VanWinkle was now conducting himself in the courtroom in a more professional manner than earlier in the trial.

Officer Jose Ruiz also testified. Mr. VanWinkle also cross-examined Officers Jose Ruiz and Matt Lewis about details of the incident and the procedures followed by jail staff pertaining to security. At the conclusion of Officer Ruiz's testimony, Mr. VanWinkle verified that the State intended to call one additional witness and asked whether the court thought the parties would be able to proceed to closing arguments that afternoon or the following morning. After the State rested, Mr. VanWinkle advised the court that he had tentatively decided he would not testify because he did not want the State to attempt to impeach him with his prior criminal history.

Mr. VanWinkle then recalled Officer Ruiz, attempting to highlight an inconsistent statement. Mr. VanWinkle then elected not to call Officer Samuel Bond or Officer Jonas Rees as witnesses, stating that he had already accomplished what he wanted to do and that further testimony would waste the court's and the jury's time.

The State and Mr. VanWinkle both presented closing arguments. Mr. VanWinkle argued that the officers' statements were not credible, that he was the victim of an assault, and there was insufficient evidence to convict him of a crime.

The jury returned a guilty verdict for one count of custodial assault. The court polled the jury pursuant to Mr. VanWinkle's request. At sentencing, Mr. VanWinkle asked for an exceptional sentence downward so he could participate in a residential drug offender sentencing alternative (DOSA) or that he be sentenced to a prison DOSA. Mr. VanWinkle requested that his standby counsel, Ms. Alexander, also speak on his behalf. Ms. Alexander made the same request of the court as Mr. VanWinkle regarding a DOSA sentence and also asked for an exceptional sentence downward based on the mitigating factor of Mr. VanWinkle not appreciating the wrongfulness of his actions.

The court determined that there was no evidence that suggested that Mr. VanWinkle's behavior stemmed from substance abuse and denied a DOSA sentence. Based on Mr. VanWinkle's offender score of 7, Mr. VanWinkle's lack of remorse and "profound rejection of authority," the court sentenced Mr. VanWinkle to a top of the range sentence of 43 months. RP (Nov. 27, 2012) at 789-90. After hearing his sentence, Mr. VanWinkle asked a clarifying question about his appeal rights and timelines for filing an appeal, which he indicated that he had also already discussed with Ms. Alexander.

Mr. VanWinkle appeals, claiming he was incompetent to stand trial and represent himself. He also argues that the court erred in failing to enter written findings of fact and conclusions of law pertaining to the CrR 3.5 hearing.

ANALYSIS

A.    *Whether the trial court committed reversible error in failing to enter written findings and conclusions following the CrR 3.5 hearing*

Mr. VanWinkle contends that the trial court erred by failing to enter written findings and conclusions supporting its CrR 3.5 ruling. He does not challenge the court's admission of the statements. CrR 3.5, which governs the admissibility of an accused's statements, requires the trial court to hold a pretrial hearing on the admissibility of any such statements and make written findings setting forth "(1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion[s] as to whether the statement is admissible and the reasons therefor." CrR 3.5(a), (c). Although failure to enter written findings of fact and conclusions of law is error, such error is harmless if the trial court's oral findings are sufficient to permit appellate review. *State v. Johnson*, 75 Wn. App. 692, 698 n.3, 879 P.2d 984 (1994). Here, the trial court explained that it was admitting the challenged statements because they were not made in response to questions from law enforcement. This is sufficient for our review. We do not need to further address the argument.

B.      *Whether the trial court abused its discretion in determining that Mr. VanWinkle was competent to stand trial*

Mr. VanWinkle argues that the trial court erred by finding him competent to stand trial. He claims that despite Eastern State Hospital's finding of competency, there were numerous indications he had mental health issues that rendered him incompetent to stand trial. He argues that Judge Matheson failed to exercise his discretion at all because he did not review the competency evaluation and "signed off on the order of competency without giving any reason or analysis of relevant factors for its decision." Br. of Appellant at 12. Mr. VanWinkle also argues that when the issue was revisited on November 5 by another judge, the judge "ignor[ed] all the rants, stage whispers, and bullying behavior of Mr. VanWinkle as well as his claiming several times to be Jesus Christ" in finding him competent. Br. of Appellant at 12. He also criticizes Judge Spanner's determination that Mr. VanWinkle was competent as untenable because "Mr. VanWinkle's delusional behavior reflects not competency, but a failure to understand the nature of the charge against him and to assist in his own defense." Br. of Appellant at 13.

Both the due process clause of the United States Constitution and RCW 10.77.050 prohibit trying an incompetent defendant. *State v. Lewis*, 141 Wn. App. 367, 381, 166 P.3d 786 (2007). Under Washington law, an incompetent person may not be tried,

16

convicted, or sentenced for committing an offense so long as the incapacity continues. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 862, 16 P.3d 610 (2001) (quoting RCW 10.77.050). In Washington, the test for competency to stand trial is "whether the accused is capable of properly understanding the nature of the proceedings against him and whether he is capable of rationally assisting his legal counsel in the defense of his cause." *State v. Wicklund*, 96 Wn.2d 798, 800, 638 P.2d 1241 (1982); *see also* RCW 10.77.010(15) ("Incompetency" means a person lacks the capacity to understand or assist in his defense "as a result of mental disease or defect.").

Washington courts generally presume that a defendant is competent to stand trial and to assist in his own defense. *State v. Coley*, 171 Wn. App. 177, 179, 286 P.3d 712 (2012), *rev'd*, 180 Wn.2d 543, 326 P.3d 702 (2014). Based upon this presumption of competency, Mr. VanWinkle bears the burden of proving that he is incompetent to stand trial. *Id.* In determining competence, the trial court may consider many factors, including "'the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.'" *Fleming*, 142 Wn.2d at 863 (quoting *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

A trial court's competency decision is entitled to great deference. *Dodd*, 70 Wn.2d at 519-20. We will not reverse a trial court's competency determination absent a manifest

abuse of discretion. *Lewis*, 141 Wn. App. at 381. A trial court abuses its discretion when its order is "manifestly unreasonable or based on untenable grounds." *Gillett v. Conner*, 132 Wn. App. 818, 822, 133 P.3d 960 (2006). Deference is given to the trial court's determination due to the court's opportunity to observe the defendant's behavior and demeanor. *State v. Hanson*, 20 Wn. App. 579, 582, 581 P.2d 589 (1978).

As detailed above, Judge Matheson signed an order for a competency evaluation and later determined that Mr. VanWinkle was competent based in part on the State's advisement that Eastern State Hospital had found Mr. VanWinkle competent. Mr. VanWinkle asserts that by relying on the State's representation rather than reading the competency evaluation, the court failed to exercise its discretion. This argument is not persuasive. This court has held that a court is within its discretion to defer to the opinion of a mental health expert. *State v. Lawrence*, 166 Wn. App. 378, 389, 271 P.3d 280 (2012) ("The expert opinion that Mr. Lawrence was competent provided a tenable basis for the trial court's legal ruling."). Moreover, the trial court was able to observe Mr. VanWinkle's appearance and demeanor and was familiar with his past behavior. And upon inquiry by the trial court, Mr. VanWinkle declined a second competency evaluation. Under these facts, the trial court was well within its discretion to find Mr. VanWinkle competent.

18

Just before trial, Judge Spanner evaluated Mr. VanWinkle's competency after standby counsel indicated concerns. Mr. VanWinkle explained that he understood the respective purposes of the various actors in a trial and "what it means [to be] in trial." RP (Nov. 5, 2012, morning session) at 80. The court noted that Mr. VanWinkle had made some comments that suggested delusional thinking, but that such thinking did not render him incompetent for trial, finding that Mr. VanWinkle had a "very good appreciation of this court process." RP (Nov. 5, 2012, morning session) at 82.

A review of the record shows a defendant who understood his role and the role of others in the proceedings. He actively participated in jury selection, asking jurors questions about whether they or their family members had ever been victims of assault, whether they had relatives in law enforcement or relatives who were incarcerated, and whether jurors had opinions about police corruption. He challenged a juror for cause and used six of his peremptory challenges. He asked that certain statements be suppressed at a CrR 3.5 hearing.

As detailed above, Mr. VanWinkle cross-examined witnesses, recalled a witness, successfully argued that he should be allowed to present impeachment evidence against Sergeant Schaefer, and demonstrated an understanding of trial procedure when he advised the court that he did not want to testify due to concerns about the State impeaching him

19

with his prior criminal history. During closing argument, Mr. VanWinkle argued the officers' statements were not credible, that he was a victim of an assault, and the evidence was insufficient to convict him. After the jury returned a guilty verdict, Mr. VanWinkle asked the court to poll the jury and asked for an appeal bond. And at sentencing, he asked for an exceptional sentence downward so that he could participate in a DOSA.

In view of this record, Mr. VanWinkle fails to establish that he was not competent to stand trial. Although he made claims and statements during trial that can be described as bizarre and argumentative, he identifies nothing in the record that is inconsistent with a finding of competency. Rather, the record indicates that he was able to understand the nature of the proceedings, the seriousness of the charge, the role of the judge and the attorneys, and the consequences of his behavior.

C.     *Whether the trial court abused its discretion by allowing Mr. VanWinkle to represent himself*

Mr. VanWinkle argues that the trial court erred in permitting him to represent himself at trial, arguing that he made the request to represent himself without understanding the legal and practical dangers of doing so. He also argues that because he was not competent to stand trial, it follows that he was not competent to represent himself. Both arguments fail.

The Sixth Amendment to the United States Constitution right to counsel carries with it the implicit right to self-representation. *Faretta v. California*, 422 U.S. 806, 818, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Article I, section 22 of the Washington Constitution creates an explicit right to self-representation. *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010). To exercise the right to self-representation, the criminal defendant must knowingly and intelligently waive the right to counsel; that waiver should include advice about the dangers of and disadvantages of self-representation. *Faretta*, 422 U.S. at 835. A thorough colloquy on the record is the preferred method of ensuring an intelligent waiver of the right to counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984); *State v. Dougherty*, 33 Wn. App. 466, 469, 655 P.2d 1187 (1982). The colloquy should, at a minimum, consist of informing the defendant of the nature and classification of the charge, the maximum penalty upon the conviction, and that technical rules apply to the defendant's presentation of his case. *Bellevue*, 103 Wn.2d at 211.

Courts should engage in a presumption against waiver of the right to counsel. *Lawrence*, 166 Wn. App. at 390 (citing *Madsen*, 168 Wn.2d at 503). However, "[t]his presumption does not give a court carte blanche to deny a motion to proceed pro se." *Madsen*, 168 Wn.2d at 504. In making this determination, the court considers the

defendant's background, experience, and conduct, which may include any mental health issues. *In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 663, 260 P.3d 874 (2011). A mentally ill defendant may proceed without counsel as long as the court is satisfied the waiver is knowing and intelligent. *Id.* at 666. The court, however, may not consider the defendant's skill in conducting trial proceedings. *Id.* at 663.

This court has noted that "[t]rial judges face exceedingly difficult choices when deciding whether to allow a defendant to waive the right to counsel in order to assert the right to self-representation." *Lawrence*, 166 Wn. App. at 395. We review decisions on the right to self-representation for an abuse of discretion. *Rhome*, 172 Wn.2d at 667. This is because "[t]he 'ad hoc' fact-specific analysis of waiver of counsel questions is best assigned to the discretion of the trial court." *Coley*, 180 Wn.2d at 559.

Mr. VanWinkle's argument is essentially premised on his assertion that he was incompetent at trial and, therefore, incompetent to waive his right to counsel. A defendant's competence to stand trial and competence to waive counsel are separate inquiries. *State v. Hahn*, 106 Wn.2d 885, 892-93, 726 P.2d 25 (1986). In *Rhome*, the court explained that "the standard to determine whether a defendant is competent to stand trial assumes he will *assist* in his defense, not conduct his defense, and therefore competency to stand trial does not automatically equate to a right to self-representation."

22

*Rhome*, 172 Wn.2d at 660 (emphasis in original). One of the underlying concerns in determining whether a defendant should be permitted to proceed without counsel is that the trial be fair. *Id.* (quoting *Indiana v. Edwards*, 554 U.S. 164, 176-77, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)). A defendant's inability to conduct a defense undercuts his constitutional right to a fair trial. *Id.*

> RCW 10.77.020(1) governs competency to waive counsel:
>
> At any and all stages of the proceedings pursuant to this chapter, any person subject to the provisions of this chapter shall be entitled to the assistance of counsel, and if the person is indigent the court shall appoint counsel to assist him or her. A person may waive his or her right to counsel; but such waiver shall only be effective if a court makes a specific finding that he or she is or was competent to so waive. In making such findings, the court shall be guided but not limited by the following standards: Whether the person attempting to waive the assistance of counsel, does so understanding:
> (a) The nature of the charges;
> (b) The statutory offense included within them;
> (c) The range of allowable punishments thereunder;
> (d) Possible defenses to the charges and circumstances in mitigation thereof; and
> (e) All other facts essential to a broad understanding of the whole matter.

The record before us does not show any abuse of discretion. At the August 9 hearing to address Mr. VanWinkle's request to represent himself, the court engaged Mr. VanWinkle in an extensive colloquy about the dangers and disadvantages of doing so. Mr. VanWinkle explained that he had taken some business law classes in college and that

23

he was familiar with the court system through previous encounters with the criminal justice system. The court informed him that he was charged with custodial assault, a class C felony that is punishable by up to five years in prison and a $10,000 fine. The court told him that he had the right to be represented by counsel and that if he could not afford his own attorney, the court would appoint one to represent him.

Nothing in this colloquy suggests Mr. VanWinkle was incompetent or unable to understand any facts relevant to waiver of counsel. The record shows that Mr. VanWinkle understood the seriousness of the charged offenses, including the potential consequences of conviction and the inherent dangers of self-representation. Accordingly, the trial court did not abuse its discretion in granting Mr. VanWinkle's request to represent himself at trial.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Siddoway, C.J.

Brown, J.

24